O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY M. NOBLE, | ) Case No. ED CV-12-572-SP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND |
| | ) ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

**I.**

**<u>INTRODUCTION</u>**

On April 24, 2012, plaintiff Judy M. Noble filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of a period of disability and Disability Insurance Benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the

1

Administrative Law Judge ("ALJ") properly discounted plaintiff's credibility; and (2) whether the ALJ's residual functional capacity determination was supported by substantial evidence. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 6-14.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that the ALJ properly discounted plaintiff's credibility and his RFC determination was supported by substantial evidence. Consequently, this court affirms the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 60 years old on the date of her July 1, 2010 administrative hearing, is a college graduate. AR at 35-36. Her past relevant work was as a senior standards specialist and technical services specialist. *Id.* at 52, 140.

On December 29, 2008, plaintiff filed an application for DIB and a period of disability, alleging an onset date of December 1, 2005, due to leg pain, diarrhea, and cramping. AR at 20, 126, 130. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 58-62, 65-70, 72.

On July 1, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 32-55. The ALJ also heard testimony from Corinne J. Porter, a vocational expert, and Dr. Samuel Landau, a medical expert. *Id.* at 48-53. The ALJ denied plaintiff's claim for benefits on August 26, 2010. *Id.* at 20-28.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since December 1, 2005. *Id.* at 22.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: irritable bowel syndrome and peripheral neuropathy. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 23.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and determined that she had the RFC to perform a range of light work, with the limitations that plaintiff could: lift/carry ten pounds frequently and twenty pounds occasionally; sit/stand/walk six hours in an eight-hour workday with breaks every two hours; and occasionally stoop and bend. *Id.* The ALJ also required that plaintiff have access to restrooms and prohibited her from work involving ladders, ropes, scaffolds, heights, and where balance was required. *Id.*

The ALJ found, at step four, that plaintiff was able to perform her past relevant work. *Id.* at 27. Consequently, the ALJ concluded that plaintiff was not disabled. *Id.* at 27-28.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 5-8. The ALJ's decision stands as the final decision of the Commissioner.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

### A. The ALJ Properly Considered Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly consider plaintiff's credibility. P. Mem. at 3-8. Specifically, plaintiff argues that none of the reasons the ALJ provided for discounting plaintiff's credibility were clear and convincing. *Id*. at 6-8. The court disagrees.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 25. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.

Here, contrary to plaintiff's assertion, the ALJ provided multiple reasons for discounting plaintiff's credibility: (1) the medical records did not support the symptoms; (2) plaintiff's testimony was inconsistent internally and with the ALJ's observations; (3) plaintiff provided inconsistent responses regarding her mental health and medication history; and (4) the symptoms were inconsistent with her daily activities. *Id.* at 24-27. Except for plaintiff's daily activities, these were clear and convincing reasons supported by substantial evidence.

First, the ALJ correctly noted that the medical evidence did not support plaintiff's alleged symptoms. *Id.* at 25-26; *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of objective medicine supporting symptoms is one factor in evaluating credibility). The medical evidence shows that plaintiff had been suffering from problems with leg pain and diarrhea since 2001. *See, e.g.*, AR at 238, 248-49, 311. But the medical records did not support the severity plaintiff alleges. With regard to plaintiff's irritable bowel syndrome, in two separate examinations in 2007, plaintiff reported only intermittent diarrhea. *Id.* at 251, 274. In January 2008, plaintiff reported less cramping after a laparoscopic adhesionolysis. *Id.* at 268. And the impressions from a 2008 x-ray and 2008 and 2009 abdomen and pelvic CT imaging were of a normal abdomen. *Id.* at 229, 248-49, 295-96. Similarly, the treatment records did not contain documentation of leg pain as severe as plaintiff alleges. In January 2008, plaintiff reported that the laparoscopic adhesionolysis helped her leg pain. *Id.* at 268. In February 2009, an EMG and NCV Report showed that plaintiff had borderline or mild neuropathy on the right leg, except for the right lateral femoral cutaneous sensory, which was severe. *Id.* at 311. As such, the lack of objective medical support is a valid basis for finding plaintiff less credible.

Second, the ALJ noted that plaintiff's testimony about her symptoms and limitations were inconsistent with her testimony concerning her actions and her work history. *Id.* at 24; *see Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009)

(claimant's ability to work after her alleged disability onset is a valid basis for discounting her credibility); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct).  At the hearing, plaintiff testified that she could only sit for one hour, stand for fifteen to forty-five minutes, and lift ten pounds.  AR at 45-46.  But plaintiff also testified that she walked a golf course in 2009, could drive from Palm Springs to Washington state with breaks, attended weekly hour-and-a-half long church services, and that the shopping bag she carried to the hearing weighed more than ten pounds.  *Id.* at 40, 45-47.  Regarding plaintiff's work history, although plaintiff alleges an onset date of 2005, plaintiff testified that the symptoms which prevented her from working, leg pain and uncontrolled diarrhea, began in 2001.  *Id.* at 37, 40-42.  Plaintiff then acknowledged that she was able to work, despite those symptoms, prior to 2005.  *Id.* at 41-42.  Plaintiff neither testified that her symptoms increased in severity in 2005 nor did the medical record support such a finding.  These internal consistencies in plaintiff's testimony are a valid reason for discounting her credibility.[2]

Third, the ALJ noted that plaintiff provided inconsistent responses regarding her mental health treatment and medication history.  *Id.* at 26.  On May 5, 2009, Dr. Kent Jordan, a consultative psychiatrist, examined plaintiff.  *Id*. at 326-30.  Dr. Jordan indicated that plaintiff provided inconsistent accounts of when she started feeling depressed and her medication use.  *Id.*  Plaintiff initially told

---

[2]   In addition, plaintiff's testimony was inconsistent with information she provided in her work history report.  Plaintiff testified that her past relevant work required her to lift up to forty pounds (AR at 39), but in her work history report, she wrote that the job of senior standards specialist required her to lift less than ten pounds and the "heaviest weight lifted" was not applicable to the job of technical services specialist.  *Id*. at 143-45.

7

Dr. Jordan she had no mental health issues, she later said had been depressed since 2005, and eventually she stated that she had been depressed since the 1990s.[3] *Id.* at 327. As for her medication use, plaintiff initially told Dr. Jordan that she had only taken two doses of hydromorphone, but later told him that she had been taking two tablets a day for the last two months. *Id.* at 328. Plaintiff acknowledges these inconsistences but argues that they are inconsequential because she is not alleging mental illness as a basis for her disability. Although plaintiff did not list depression on her application, her inconsistencies regarding her mental health, nevertheless, are relevant because they directly relate to her medical history and reflect a willingness to lie.

Finally, the ALJ also concluded that plaintiff's testimony was inconsistent with her daily activities. *Id.* at 24; *see Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (a claimant's ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit him). The ALJ noted that plaintiff cooked, cleaned, and did a neighbor's laundry. AR at 24. But "the mere fact a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly capacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, although the ability to clean, cook, and do laundry suggest the ability to perform some work, these daily activities were not necessarily incompatible with the symptoms alleged. Thus,

---

[3] The record also contains other inconsistent responses regarding plaintiff's mental health history. In an undated medical history, which could have been completed in 2007 at the earliest, plaintiff stated that she was being treated for depression. AR at 238. But during a December 27, 2007 examination, plaintiff denied having any mental health problems, including depression. *Id.* at 275.

plaintiff's reported daily activities are not a clear and convincing reason for discrediting her.

But the ALJ's improper reliance on plaintiff's daily activities to discount her credibility was harmless. *See Batson v. Comm'r*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but such error was harmless because the ALJ's remaining reasons and ultimate credibility determination were adequately supported by substantial evidence in the record). The ALJ's error does not "negate the validity" of his ultimate credibility finding, and the ALJ's decision remains "legally valid, despite such error." *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks and citation omitted).

Accordingly, the court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's credibility and subjective complaints.

**B.     The ALJ Properly Determined Plaintiff's RFC**

Plaintiff complains that the ALJ's RFC assessment was not supported by substantial evidence. P. Mem. at 8-10. Specifically, plaintiff argues that the opinions of Dr. Landau and Dr. Kristof Siciarz, a consultative examiner, were inadequate to support the ALJ's RFC determination and, contrary to the ALJ's express statements otherwise, he actually rejected those opinions. *Id.* The court disagrees.

RFC is what one "can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence. *Id.* When the record is ambiguous, the Commissioner has a duty to develop the record. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen*, 80

9

F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."). This may include retaining a medical expert or ordering a consultative examination. 20 C.F.R. § 416.919a(a). The ALJ may order a consultative examination when trying to resolve an inconsistency in evidence or when the evidence is insufficient to make a determination. 20 C.F.R. § 416.919a(b).

Here, based on an evaluation of the entire record, the ALJ determined that plaintiff had the RFC to perform a range of light work with some restrictions. AR at 23. Among the medical opinions the ALJ considered and gave great weight included those of Dr. Landau and Dr. Siciarz.

Dr. Landau, after reviewing all of plaintiff's available medical records and listening to her testimony, opined that plaintiff's symptoms were suggestive of irritable bowel syndrome and peripheral neuropathy, but the neuropathy was not medically severe. AR at 48. Dr. Landau also opined that neither met a Listing. *Id.* at 51. Dr. Landau then opined that the conditions limited plaintiff and plaintiff had the RFC to stand/walk/sit six hours in an eight-hour work day with breaks every two hours, lift/carry ten pounds frequently and twenty pounds occasionally, climb stairs, and occasionally stoop or bend, but needed ready access to restroom facilities. *Id.*

Dr. Siciarz examined plaintiff on March 30, 2009. *Id.* at 312-16. Based on the examination alone, Dr. Siciarz opined that plaintiff had chronic abdominal pain and peripheral nerve neuropathy. *Id.* at 315. Dr. Siciarz further opined that plaintiff had the RFC to stand/walk six hours in an eight-hour work day, sit without restriction, and push/pull/lift/carry fifty pounds occasionally and twenty-five pounds frequently. *Id.* at 315.

The ALJ was entitled to give weight to both Dr. Landau and Dr. Siciarz's opinion, but reach his own RFC determination. *See* 20 C.F.R. §§ 404.1527(d)(2) (the responsibility for determining the RFC is reserved to the Commissioner); 404.1546(c) (same). Here, the ALJ clearly considered the medical records, medical opinions, and plaintiff's testimony, and he based his RFC assessment on the most compelling evidence in the record. *See, e.g.*, *Munoz v. Astrue*, No 11-05094, 2012 WL 2092489, at *1 (C.D. Cal. June 7, 2012) ("[T]he RFC as defined will represent the ALJ's conclusion as to what is the most compelling and persuasive evidence, from all of the opinions reviewed."). The ALJ largely accepted Dr. Landau's opinion, and only (unlike Dr. Landau) found plaintiff's neuropathy to be a severe impairment "after consideration of [plaintiff's] subjective complaints." AR at 26. Moreover, in adopting Dr. Landau's RFC determination despite rejecting Dr. Landau's opinion that plaintiff's neuropathy was not severe, the ALJ noted that the RFC still took the neuropathy into consideration. AR at 26; *see also Magallanes v. Bowen*, 881 F.2d 747, 753-754 (9th Cir. 1989) (an ALJ does not have to adopt a physician's opinion in its entirety and can properly reject portions of it).

In any event, even if the ALJ had actually rejected the opinions of Dr. Landau and Dr. Siciarz, the remaining medical evidence did not support a more restrictive RFC. As discussed *supra*, the treatment records support an irritable bowel syndrome and peripheral neuropathy diagnoses, but the objective findings did not support plaintiff's claims. *See, e.g.*, AR at 238, 248-49, 311. And other than Dr. Mann's unsupported opinion, no physician opines or mentions any restrictions.[4]

---

[4] The ALJ had no further duty to develop the record. He had retained two consultative examiners and a medical expert. *See* AR at 48-51, 312-16, 326-30.

11

Accordingly, the ALJ did not err. The ALJ's RFC determination was supported by substantial evidence.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: January 28, 2013

_____
SHERI PYM
United States Magistrate Judge

---

Further, the ALJ provided plaintiff the opportunity to submit the treatment notes, but plaintiff did not. *Id.* at 53-54.

12